Victorio de la Rosa, Plaintiff and Appellee, v. Heirs of Francisco L. Quevedo González, Etc., Defendant and Appellant.

No. 6527.   Argued February 21, 1934.—Decided July 11, 1934.

*José Veray, Jr.*, for appellant.   *García Méndez & García Méndez* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Victorio de la Rosa sued Francisco L. Quevedo to recover $936, interests and costs.   He based his complaint on the following facts:

On August 10, 1929, the defendant loaned the plaintiff five thousand dollars which plaintiff bound himself to repay, with $850 agreed interests, in thirty consecutive installments of $150 each, beginning on December 1929, for which purpose the plaintiff and his wife assigned to the defendant an equal number of rent installments which they were to receive from Central Coloso, Inc.   The contract was embodied in a public deed.

Though plaintiff stated in the deed that he had received five thousand dollars, the truth is that he only received four thousand two hundred.

The defendant has received punctually the rent installments assigned to him, and the plaintiff has faithfully fulfilled his obligations under the contract.

In accordance with the interest agreed upon for the $5,000 loan, $136 correspond to the unreturned $800.

The plaintiff has demanded the refund of the $800 and interest thereupon from the defendant and the latter has refused to do so, for which reason judicial proceedings have been instituted.

The complaint was filed on December 24, 1932. The defendant died and on March 6, 1933 his heirs, Magdalena Arroyo, his widow, and Rubén, Esther, María and Gloria Quevedo Arroyo, his children, appeared through their attorney and demurred to the complaint alleging that it did not set up facts sufficient to constitute a cause of action and they answered it by a general denial to each and all of its facts.

The case went to trial, both parties offered their evidence and the court finally sustained the complaint with costs. The defendants took an appeal assigning in their briefs the commission of seven errors which we shall study and decide after stating what happened at the trial.

The plaintiff began by offering in evidence the deed executed before notary Arturo Reichard wherein the loan contract was embodied. It was admitted without objection. The contract appears therefrom in the manner stated in the complaint, and as to the receipt of the money loaned it says *verbatim*:

"Don Victorio and his wife doña Joaquina declare that they have taken as a loan from don Francisco L. Quevedo González the sum of FIVE THOUSAND DOLLARS, which they acknowledge to have received in cash before this Act. . . ."

Célida de la Rosa, daughter of the plaintiff was then called to the witness stand. She declared that she knew Mr. Quevedo and that she knows Mr. Reichard. On August, 1929, she lived with her parents in Aguadilla, in the villa of Mrs. Ducós in La Cuesta, where Mr. Reichard went to have her

parents sign a deed wherein they acknowledged a money loan contract with Mr. Quevedo. Mr. Reichard read the deed. She was then asked:

"When don Arturo read that deed, did your father say any-thing?

To which counsel for defendant said:

"I object, Your Honor, because that is hearsay evidence; I object to the witness testifying as to the statements made by one of the contracting parties, because the best evidence is the party himself."

The point was argued by both sides and decided by the court as follows:

"The Court, in view of the complaint, and of the holding of the Supreme Court of Puerto Rico in *Rosado* v. *Rosado,* 17 P.R.R. 447, and, because of the relation that it might have with the instant case, of the decision in 1 D.P.R. 439, and especially on the holding in the case of *Fernández et al.* v. *González et al.,* 16 P.R.R. 618, it being clearly and positively settled by the doctrine and by the adjudicated cases that the admission of extrinsic evidence to show a lack of cause or consideration is proper, by analogy—it being herein alleged that part of the consideration was not received—we think that the same rule and the same doctrine established by our Supreme Court and by the Supreme Court of Spain in the judgment invoked by our Supreme Court in the case of *Rosado* v. *Rosado,* applies. The Court admits over the objection of the opposing party the testimony of the witness."

The defendant took an exception on the following grounds:

"First, because the statements made by the plaintiff in the presence of the witness, about which she is going to testify, constitute hearsay and self-serving evidence; and further they modify the terms of the contract, such parole evidence being inadmissible because no fraud or surprise is alleged in the complaint, as decided in *Freiría & Co.* v. *Cortéz Hermanos & Co.,* 32 P.R.R. 117; second, because the admission of such evidence is equivalent to an alteration of the terms of the contract. *Nicorelli* v. *Ernesto López & Co.,* 26 P.R.R. 49; third, because furthermore it constitutes a violation of Sections 25, 28 and 101 of the Law of Evidence in force in Puerto Rico; and, fourth, because the admission of the testimony of the

witness about the statements made by the plaintiffs before her constitutes a surprise in this act for this party, inasmuch as the plaintiff in person is present before this Court and the best evidence would be his testimony as to said matter, so that the opposing party could have the right to cross-examine him.''

The witness went on, saying that her father had stated that $800 remained to be delivered, to which the notary answered that, as her father and Mr. Quevedo were such good friends, the deed could be signed and they would later fix up the difference. The deed was then signed. Mr. Quevedo was not present.

Counsel for the defendants stated that he intended to impeach the testimony of the witness. In turn counsel for plaintiff announced that he was going to offer the testimony of the plaintiff himself about the transaction in question so as to give the defendant the opportunity to cross-examine him, for which purpose he begged leave from said party defendant. The latter through its counsel refused the permission requested.

Antonio Herrera, a resident of Aguadilla, took the stand. He knows the plaintiff and notary Reichard. The latter went to the house of the plaintiff in August, 1929, took out some papers and began to read them to don Victorio. The same question raised with the other witnesses was raised now. The judge overruled the objection and the defendant took an exception as heretofore. Witness said that don Victorio stated that some money was lacking and that he was not going to sign the paper. That don Victorio finally signed ''because don Arturo told him to sign the paper, that said matter of the shortage of the money would be fixed up later; that was what I heard.'' The witness was in the house waiting to be paid for some gardening he had done for don Victorio.

The third witness to testify was Simón Vélez. He knew Mr. Quevedo and he knows the plaintiff who sent for him to help him balance an account with Mr. Quevedo. The fol-

lowing question was put to him: "Did don Victorio and don Paco discuss the matter?" And the defendant objected "because evidence as to transactions between a person now dead and the plaintiff himself is inadmissible."

The court permitted the question and the witness answered:

"Well, don Victorio de la Rosa argued with him, and he wanted don Paco Quevedo to settle a pending account he had with him; don Victorio wanted to settle the account and then Mr. Quevedo called for his son to make a typewritten rapid balance which he did a few minutes later."

Rubén, the son, came and made the typewritten balance, the same one which is shown to him and which was presented and admitted in evidence over the objection of the defendant. It says:

"Bank instruments $2,255.00—(in pencil: 'Look out'); Cash to him $40.00—(in pencil 'for sugar cane'); For a cow returned $50.00 —(in pencil: 'O. K.');—Given to him by Mr. Reichard, Esq., 1,855.00—(in pencil: 'O. K.');—$4,200.00—Plus 800.00 (in pencil: 'no')—$5,000.00—May 23, 1931—(In pencil: 2,255 (less) 1,670 (equals) 585.)"

Finally the plaintiff testified in his own behalf. He knows that the Contral Coloso paid the 39 rent installments of $150 each. The $800 involved in the suit has never been refunded to him.

On cross-examination by counsel for defendants he answered that he began his efforts to get the amount in default in a friendly manner five days after the signing of the deed. That in 1930 he was in San Juan, in the penitentiary. He wrote then to Quevedo. He recognizes the letter dated July 10, 1930.

The evidence for the defendants consisted in the declaration of notary Reichard, attorney-at-law and notary public of Aguadilla before whom the deed was executed. He went to sign said deed to the house of plaintiff with Mr. Quevedo

and the witnesses. He was asked if the plaintiff made any statement about a shortage of $800 and he answered:

"No, sir, there were no such statements; then and there I was entrusted with the sum of $1,850 to be delivered to don Victorio de la Rosa later on, as soon as the assignment was notified to Central Coloso and the latter would give its consent thereto); that same night under my personal responsibility I gave to don Victorio, in my house, a check for $200 from the said sum, in spite of the fact that Coloso had not been notified of the assignment made and had not given its consent thereto; on August 12, that is, two days later, I gave him $655.00 more, though the transaction of Coloso was not yet finished; on August 14 don Victorio told me that the affair with Coloso was already settled and asked for the balance in two checks: one for $200 and another for $700, which I did, and I kept the remaining $95 left with me by the spouses De la Rosa-Labadie for the notification and deeds made in San Juan and for the deed executed here in this transaction with Mr. Quevedo; with that, the amount left with me was liquidated, passed over to Mr. de la Rosa by the aforementioned checks, which he cashed, and which were given to him by me personally against the Banco Comercial de Puerto Rico; the sum left in reserve with me was $1,850."

He did not see there the daughter of plaintiff, nor the other witness who testified, Antonio Herrera.

In the testimony of one of the defendants, Rubén Quevedo, who said that he knew Simón Vélez who was angry with the witness "because of late he has fallen into the habit of writing to me asking for loans of money which I always refused and because of that it seems that he is angry with me." He recognized a piece of paper sent to him by Vélez a few days before asking for $1.50 which he refused.

He was shown the balance which Vélez affirmed had been made by him and he did not acknowledge it as such. He said that his father carried no books of account whatsoever. He deposited his funds in the bank and he kept his accounts in the same stub book. He used to pay in checks or in cash.

And finally, in the checks to which notary Reichard referred, in the paper written by Vélez, and in the letter of plaintiff to Mr. Quevedo dated July 10, 1930, wherein he says

nothing about the money now claimed in this suit. He asks about his negotiations and those of their mutual friends and refers to a wagon he had for sale.

After summarizing the evidence and the questions raised at the trial, we are in a better position to study and decide the assignments of error, which can be summarized as follows:

The court erred, 1, in permitting Célida de la Rosa to testify about statements made, according to her, by plaintiff to the notary; 2, in not ordering the striking out of said testimony; 3, in permitting witness Herrera to testify about the same matter; 4, in permitting Simón Vélez to testify about transactions had with a person now dead; 5, in admitting in evidence the document which witness Vélez said had been typewritten by Rubén Quevedo by order of his deceased father; 6, in adjudging the defendant to pay costs; 7, in acting with bias, prejudice and partiality in the admission and weighing of the evidence, rendering the judgment appealed from.

■ We entirely agree with the appellee that in a case like this, in spite of the fact that the deed recites that the total amount of the loan was received, evidence to the contrary may be brought to trial.

Already in 1911 this Supreme Court, through its Associate Justice Mr. McLeary, in the case of *Rosado* v. *Rosado,* 17 P.R.R. 447, said:

"Thirdly, did the trial court err in permitting the plaintiff to deny having received the purchase money named in the deed after having admitted the same in the presence of the notary at the making of the instrument and in spite of the recital therein that: 'After the receipt of the purchase price has been acknowledged, no exception can be taken against the certainty of said acknowledgment, even if it should appear afterwards that the statement concerning the delivery of the price was entirely or partially false?'

"The doctrine of estoppel cannot be invoked in this case. An estoppel exists where one party makes a representation of a fact as existing and the other party giving credence thereto acts upon it to his detriment, then the first party will not be permitted to deny

the allegation first made. Such is not the present case. If there was no money paid by the vendee to the vendor the latter knows this to be the case, and no act of hers was founded on any such representation. There is no estoppel. It is declared in our Civil Code (section 1242) that contracts without consideration have no effect whatsoever; and that the statement in a contract of a false consideration (Section 1243) renders it void altogether. And Section 1244 of the Civil Code permits proof contradicting the existence of a consideration which may support a contract. And it is further declared in Section 1245 of the Civil Code that:

" 'Contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist.'

"Then clearly it is permitted to inquire into the existence of the essential conditions of a contract, one of which is the existence of a sufficient consideration. It would be strange indeed if the law deemed a contract void for a false consideration expressed therein and then should not permit proof to be made of its falsity. The civil law, as set forth in our code, in this particular does not differ materially from the common law, which has always permitted the want of a sufficient consideration, though one is expressed in the written instrument, to be show at the trial.

"Then the trial court did not err in permitting plaintiff to deny that any money passed between the parties and to sustain this denial by proof."

And as stated in 10 R.C.L. 1042:

"In reference to all instruments acknowledging the receipt of a consideration, it is now well settled that it is competent by parol to show that no consideration was in fact paid or received, or that the consideration was greater or less than or different from the one expressed. This may be done for every purpose except to impeach or destroy the instrument. The amount or kind of consideration is not considered an essential part of the contract, and is open to contradiction or explanation, like a common receipt."

This same case shows how wise the rule is. Disregarding the testimony of the witnesses for plaintiff and limiting ourselves to the testimony of the notary before whom the deed was executed, and who was called to the witness stand by the defendants themselves, we find that it is not true that

the total amount of the money loaned was received prior to the execution of the deed as therein stated. The notary kept in reserve $1,850 which he thereafter delivered to the plaintiff in several items.

Thus, if the modification of the terms of the contract as to said point were the only objection, we would hold that there was no error in admitting the testimony.

██ ██ But there was a stronger objection. When counsel for plaintiff asked permission from defendant to put plaintiff on the witness stand, he literally expressed himsel fas follows:

"Your Honor, we announce that we now offer in evidence the testimony of the plaintiff don Victorio de la Rosa, so as to give the defendant the opportunity to cross-examine him about everything that happened in the transaction in question. We are aware of the fact that we can not use him as our witness unless the opposing party consents thereto; we now ask permission from the opposing party to have the witness testify, because otherwise your Honor has no other alternative but to reject that testimony in accordance with the theory established in *Wilcox* v. *Axtmayer et al.*, 23 P.R.R. 319."

In the case cited it is held that Section 3 of an act to define who are competent witnesses, approved in 1904 is still in force. It reads:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this Section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

And if it is admitted by the plaintiff and appellee himself that he could not testify personally in relation to said point, it is clear that neither can he testify through other witnesses who would repeat what he said.

And it is said in 22 C.J. 217,

"Hearsay evidence does not become admissible by reason of the fact that the declarant has left the state, or country, or is sick, or

cannot be examined, or compelled to testify, or is incompetent as a witness.''

Thus, errors 1, 2, 3, and 4 exist. Also error number 5 because, without the declaration of Vélez, the typewritten note attributed by him to Mr. Quevedo, deceased, and to his son Rubén, is of no value.

And errors 6 and 7 also exist because without the testimony of Miss de la Rosa, and of Herrera and Vélez there is no sufficient evidence to support the complaint sustained by the trial court. However, it seems only just to add, in relation to error 7, that we do not think the judge acted moved by bias, prejudice or partiality. On the contrary, it appears from the record that he was moved by a sense of justice and by the desire to disclose and to fix the exact truth in the case, which perhaps he did, and stated it in his judgment. However he admitted in evidence some testimony under no authority of law and his judgment lacks proper foundation and falls.

The appeal must be sustained, the judgment appealed from reversed and substituted for another dismissing the complaint, without special condemnation of costs.